ALFRED F. HASSETT, p. a. *vs.* WINTHROP D. THURSTON, Town Treasurer.

JUNE 18, 1920.

PRESENT: Sweetland, C. J., Vincent, Stearns, Rathbun, and Sweeney, JJ.

(1) *Municipal Corporations. Fireworks. Nuisance.*

A declaration alleged that a municipal corporation created a nuisance by issuing a license for the display of fireworks without restriction or supervision looking to the safety of the public; without specifying the particular persons who should conduct the display and without any inquiry as to their skill in such matters and failed to warn the public of danger by placing guards, &c., which would prevent such display from becoming a public nuisance, whereby plaintiff was injured.

*Held,* that a display of fireworks was not in itself intrinsically dangerous and there was no allegation that the place where the display was made was unsuitable.

*Held,* further, that the declaration set out a case of negligence of those who were conducting the display and as the permission given by the town merely authorized the display to be carried out in a careful and prudent manner

and the town was not to derive any benefit therefrom it was not responsible for the negligence of those whom it might lawfully license in the exercise of its governmental or discretionary powers.

(2) *Municipal Corporation. Governmental Duty. Respondeat Superior.*

When a duty is imposed upon a municipal corporation by statute from the discharge of which the municipality derives no profit or advantage the performance of such a duty is public or governmental and the municipality is not responsible for the negligence of its officers and the rule of *respondeat superior* has no application.

Trespass on the Case for negligence. Heard on exceptions of plaintiff and overruled.

Vincent, J. This is an action of trespass on the case for negligence brought by Alfred F. Hassett, through his father and next friend, against Winthrop D. Thurston, as town treasurer of the town of Bristol, to recover damages for personal injuries. The plaintiff's declaration is in four counts. The defendant demurred to all of the counts and the demurrer was sustained by the Superior Court. The plaintiff states in his brief that his argument here is based upon the decision of the Superior Court in sustaining the demurrer to the third count and we may therefore restrict our consideration to the question or questions thereby raised.

The plaintiff's third count alleges that on the 16th day of July, 1915, at about eight o'clock p. m., the plaintiff was traveling upon a certain walk crossing a public square in the town of Bristol known as "The Common" which said walk crosses said common in a diagonal direction from Wood street to State street, public highways in said town; that said square or common was located in the thickly populated portion of said town and was surrounded by houses and buildings located in close proximity to each other, and was a place where the public was in the habit of congregating in large crowds and of passing and repassing in great numbers; that the firing of rockets in said square was dangerous to the surrounding buildings and to the plaintiff and others of the public who were wont to con-

gregate in said square whereupon it became the duty of the town of Bristol not to permit, aid or abet upon said square the maintenance of a public nuisance or the using of any rocket except for the purpose of exhibiting on a suitable occasion by skilled persons duly licensed by the town council; that the town did not exercise such care but wholly neglected so to do; that the said fireworks display was conducted by persons who had no license from the town council; that the town council had authorized, aided and abetted in the firing of said rockets without restriction or supervision looking to the safety of the plaintiff and the public; that the town council had authorized certain bodies of people against the statute to make fireworks display without licensing any particular person to conduct the display and without inquiring what persons were to conduct the display, or what knowledge, skill or ability such persons had; that no care was taken to warn the plaintiff or the public of any danger limits by the placing of guards or to prevent said display from becoming a nuisance; that when he reached a place one hundred feet from the baseball diamond, where a display of fireworks was being conducted by certain persons, said persons conducting such display then and there set off a certain skyrocket in such close proximity to said path that heavy substances struck plaintiff, resulting in the injury complained of.

The grounds of the demurrer of the defendant to this count may be summarized as follows: (1) that the facts therein stated are not sufficient to constitute a cause of action against the defendant; (2) that the regulation of the use of said "Common" and the licensing and supervision of a display of fireworks thereon is not within the ministerial duties of said town but is within its governmental, judicial and discretionary powers and the said town is not accountable to the plaintiff for the non-exercise of, or the manner in which it exercises, such discretionary powers; (3) that the defendant was not bound either to supervise the display, examine the licensees as to their ability or to provide safe-

guards so that the display would not become a nuisance to the plaintiff; (4) that it does not appear that the natural tendency of permitting an exhibition of fireworks on said common would be to create a public nuisance; (5) that it does not appear that said display constituted a public nuisance; and (6) that it does not appear that the plaintiff sustained the injuries he complains of through the breach of any duty owed to him by the defendant.

The third count of the declaration, which is now under consideration, alleges in substance that the defendant created a nuisance by issuing a license for the display of fireworks without restriction or supervision looking to the safety of the public; without specifying the particular person or persons who should conduct the display; without any inquiry as to their skill in such matters and failed to warn the public of danger by placing guards, &c., which would prevent such display from becoming a public nuisance.

It is provided by Section 4, Chapter 134, General Laws of Rhode Island, 1909, that, "Every person who shall . . . enkindle or use . . : any rocket, cracker, squib or other fire-works . . . unless he shall previously obtain special license from the town council of the town . . . and for the purpose of exhibition on a suitable occasion, shall be fined ten dollars for each offence." While this statute does not in terms specifically command or authorize a town council to grant licenses the authority to do so, in its discretion, must be implied. In the case of *Lincoln* v. *City of Boston*, 148 Mass. 578 it was alleged that the firing of a cannon on Boston Common, under a license granted in pursuance of a city ordinance, so frightened the plaintiff's horse while being driven along an adjoining street that he ran away and in collision with another team threw the plaintiff out and injured him and that such firing was a public nuisance. A demurrer to the declaration was sustained. The ordinance referred to was substantially like the provision of our statute above quoted. In its opinion the court said that the license which the city gave, "was

not given by it as an act of ownership, but as an act of municipal government"; that the purpose of the statute "is prohibitory, and the license which it implicitly authorizes . . . is merely a removal of the prohibition, and of the liability to a penalty which otherwise would be incurred. . . . The license is not a permission granted by the agents of the owner, but an adjudication of an exception to a *quasi* statutory rule, made by a person who for that purpose is not the owner's agent. . . . The person who fires the cannon is not the city's agent or servant, and the firing is not the city's act."

The main question to be determined is whether or not the plaintiff's declaration states a nuisance for which the town of Bristol is responsible. Or in other words was the granting of the license to display fireworks upon the common the exercise of a governmental or discretionary power?

The plaintiff claims that the defendant is liable in damages because its duly authorized body, its town council, authorized an act which from its nature would be liable to and did become a nuisance to the injury of the plaintiff.

We do not think it can be reasonably said that a display of fireworks is an act intrinsically dangerous and the plaintiff does not so allege in his declaration. Danger may however arise from the handling of fireworks in a careless or imprudent manner. The licensees were authorized to do something which was not unlawful. The statute recognizes that such authority may be given them by the town council but such authority does not cover any careless or imprudent act.

*Pope* v. *City of New Haven*, 91 Conn. 79 was a case where the plaintiff alleged that the defendant conducting a fire works display on the New Haven Green negligently sent up a bomb having a defective fuse which failed to explode in the air but reached the ground, exploding in a vacant lot across the street where the plaintiff was standing. The court in its opinion said: "It is alleged that the display of fireworks took place on the public green in the defendant

city and in dangerous proximity to certain of the city streets, and it has been argued that this allegation shows that the act of discharging the bombs was intrinsically dangerous and constituted a nuisance for which the city is responsible. As pointed out already, there is no allegation that the injury resulted from such a cause."

In *De Agramonte* v. *City of Mount Vernon,* 112 App. Div. (N. Y.) 291 the plaintiff was struck by a missile while watching a display of fireworks in a public park of the city of Mount Vernon by the Italian societies pursuant to a license issued by the mayor. The plaintiff claimed that the associations used an improper tube to hold the bomb by reason of which the piece of iron was hurled against her and the court in its opinion said: "The permit was in effect a license to do an act not unlawful. . . . Given by authority pursuant to ordinance, it merely authorized the act 'to be done in a careful, prudent and lawful manner.' " And the court further said, in discussing the case, "the danger arose from the negligent manner in which the licensees performed the act. . . . The mode adopted, and of which the complaint is made, was to lodge the bomb in a cast iron tube and discharge the bomb from it. There is not the slightest proof that the permit authorized any such tubes. . . . There was the implied condition that the act should 'be done in a careful, prudent and lawful manner.' " See also *Little* v. *City of Madison,* 49 Wis. 605.

In the case of *Kerr* v. *Brookline,* 208 Mass. 190, the plaintiff was struck by a skyrocket fired from a public playground during a Fourth of July celebration which was conducted by the town and she claimed that she could recover on the ground of the maintenance of a nuisance, but the court said, "The attempt to hold the town under the law of nuisance fails, because the case involves no elements of alleged wrong except ordinary negligence."

In *Wheeler* v. *City of Plymouth,* 116 Ind. 158 the mayor gave permission to fire off gunpowder in an anvil on July 4th. The glass in plaintiff's house was broken by the discharge of

pebbles and sand and he brought suit to recover the damage which he had thereby suffered and the court held that, "The act of the mayor in granting permission to fire the anvil did not create a liability against the city. The utmost that can be granted is that the act of the mayor constituted the wrongdoers the licensees of the corporation, and granting this, but by no means so deciding, the city is not liable for their act, because it is not shown that it was intrinsically dangerous. It is quite well settled that a municipal corporation is not liable for the acts of its licensees unless it is shown that they were authorized to perform an act dangerous in itself. . . . Here there is nothing to show that the authorized act was intrinsically dangerous; on the contrary, the danger arose from the negligent manner in which the licensees performed the act."

The third count of the plaintiff's declaration does not allege that the common in Bristol was a place unsuitable for a display of fireworks but contains an admission, inferentially, that such use of the common would not be improper under certain conditions, that is, if the occasion was a suitable one, if skilled persons were duly licensed or if the care was taken to warn the public of danger by placing guards, &c. This count seems to allege the negligence of those who were conducting the display and that the town should be held responsible therefor. The plaintiff has devoted a portion of his brief to the proposition that the town is liable on the ground that it licensed the display of fireworks in a place dangerous in itself. We do not think that the plaintiff raises that question by his pleading but, on the contrary, his pleadings show that he is seeking to recover damages from the town resulting from the negligence of the licensees in their management of the display.

The plaintiff seems to place much reliance upon the cases of *Speir* v. *Brooklyn*, 139 N. Y. 6, *Landau* v. *City of New York*, 180 N. Y. 48, and some other cases of like import which we need not enumerate. We think these cases are distinguishable from the case at bar. In the one case there

was a license to display fireworks at the junction of two narrow public streets and in the other upon a great thoroughfare where a multitude was assembled. In the *Speir* case it was held that, "The finding of the trial judge that the use of the street for the discharge of fireworks constituted a public nuisance, is amply justified in view of the circumstances." The court then proceeded to say, "It has been decided in some cases that the discharge of fireworks in the streets of a city or village, is a nuisance *per se.* . . . It may be doubted whether the doctrine in its full breadth can be maintained. The practice of making the display of fireworks a part of the entertainment furnished by municipalities on occasion of the celebration of holidays or the commemoration of important public events, is almost universal in cities and villages, and we are not prepared to say that this may not be done, and that streets and public places may not be used for this purpose, under the supervision of municipal authorities, due care being used both as to the place selected, and in the management of the display, without subjecting the municipality to the charge of sanctioning a nuisance and the responsibility of wrong doers."

The opinion amounts to this, that a municipality may conduct a fireworks display in a public street without creating a nuisance *per se* or it may become such a nuisance under certain circumstances as, for instance, at the junction of two narrow streets of a large city completely built upon where the danger would be greatly enhanced by the location and any misadventure in the discharge would be likely to result in injury to persons or property.

In the *Landau* case, *supra,* a political organization was permitted by a resolution of the board of aldermen of the city of New York, duly approved by the mayor, to make a display of fireworks in a part of Madison avenue near Madison square. In Madison square and the adjoining streets seventy-five thousand people were assembled to receive the election returns and view the parade, standing closely crowded in Madison Avenue Park and on both

sides of Madison avenue. From some unknown cause some of the fireworks exploded killing the plaintiff's intestate. The court following the case of *Speir* v. *City of Brooklyn*, *supra*, says in its opinion, "There is a distinction, well recognized by law, between the discharge of fireworks upon private property and in a public highway. There is also a distinction in this regard between highways, depending on their location, the extent of the traffic upon them and the danger involved in case of accident. Fireworks in certain streets may or may not be a nuisance, according to the circumstances. . . . "

It is readily apparent that in both of the foregoing cases cited by the plaintiff the circumstances, upon which the decisions are based, are very different from those surrounding the display of fireworks upon the common at Bristol which the plaintiff seeks to have us characterize as a nuisance *per se.*

The plaintiff cites the case of *Sroka* v. *Halliday et. al.*, 39 R. I, 119. We have no intention of overruling or in any way modifying the law as therein laid down but we think that that case differs from the case at bar in several important particulars. That case was not brought against the city of Pawtucket but against eleven individuals, six of whom were appointed by a vote of the city council as a committee on the Fourth of July celebration, and five others, members of the board of trade whom the six members had added to themselves as members of such committee by their own act and upon their own responsibility. The court said, "it is idle for these defendants to claim that they were acting as duly authorized agents of the city of Pawtucket. The six members appointed by the city council could not endow the five outsiders with agency for the city and by acting as they did without authority they must be deemed to have acted upon their personal responsibility, together with the other citizens whom they permitted to join them" and in this connection the court in its opinion calls attention to the fact that in the resolution appointing the com-

mittee there is no mention of fireworks and there is no testimony showing any "special license" therefor as required by Section 4, Chapter 134, General Laws, 1909. The opinion further holds that the case is founded upon the negligence of the defendants through their agents with whom they contracted to furnish and set off the fireworks and not upon the theory of a nuisance *per se,* and the negligence of the defendants is defined to be "causing or permitting to be done acts in themselves dangerous on account of the explosives used in the display and requiring special precautions to be taken to prevent injury to persons and property; and in permitting explosive bombs to be so discharged by the agents of the defendants as to fall upon private property while unexploded and there to remain without recovery until found by the plaintiff, John Sroka, and then exploded to his great injury."

The plaintiff Sroka was not endeavoring to recover against the city of Pawtucket but against private individuals who conducted a display of fireworks without the license required by statute and whose negligence consisted in permitting bombs to be so discharged as to fall upon private property while unexploded and to remain there without recovery. The explosives referred to on account of which the acts of the defendants were dangerous were bombs, which were expressly excepted and forbidden in the permission granted to the Italian societies in the case at bar. The *Sroka* case, differing as it does in many material respects from the case now before us, does not seem to possess any features which should control our present consideration.

In this connection it may be convenient to consider the contention of the plaintiff that the town of Bristol is liable because, "It gave an authorization to an indefinite number of persons in an indefinite number of societies to perform acts which were dangerous in themselves." We have already stated that we cannot say that a display of fireworks is intrinsically dangerous and that the plaintiff has not so alleged in his declaration. The authorization given by the

town council for the display of fireworks is to be found in the following vote as quoted in the plaintiff's brief: "Voted: That the Italian Societies be granted permission to hold their annual celebration on the Common July 6, 1915 with fireworks excluding the use of bombs."

In the first place we cannot assume that, in passing this vote, the town council was without any knowledge or information as to the number of the Italian societies in Bristol or as to the character and responsibility of those who were entrusted with their management and control.

In *Landau* v. *City of New York, supra,* the permission to display fireworks was extended "to meetings and parades of political parties or associations during the campaign of 1902" and the court said, "While the persons are not named, they are plainly designated." The plaintiff argues by his brief that, "The defendant, in issuing this blanket license, cast away the right to say that it could presume that due care would be used in the performance of the dangerous acts, and precluded itself from assuming that the fireworks would be conducted in a safe way. In fact, by a license to an indefinite number, the town threw open the way to the establishment of a nuisance, gave carte blanche to a large, unspecified number of persons, without regard to their capacity, without considering whether they were skilled or unskilled in setting off fireworks, without selecting for the task a person who could be regarded as suitable and without designating any person to whom the town or the individual could turn with a charge of responsibility,—and in so doing the Town Council authorized an act liable to become a nuisance. Placing responsibility in an unknown and uninvestigated number of persons is courting danger, and in the following cases, where it was done, the City was held:", and in support thereof cites *Landau* v. *City of New York,* 180 N. Y. 48; *Walker* v. *New York,* 95 N. Y. S. 121; *Moore* v. *Bloomington* (Ind. App. 1911) 95 N. E. 374; *City Council of Augusta* v. *Jackson,* 20 Ga. App. 710.

None of these cases support this contention of the plaintiff. The *Landau* case, as we have already seen, is directly contrary to it while in the other three cases the question of indefinite parties is neither discussed nor mentioned.

(1)    As the permission given by the town merely authorized the display of fireworks to be carried out in a careful and prudent manner and it not appearing that the town was to derive any benefit therefrom, it seems to us that it would be going too far to hold the municipality responsible for the negligence of those whom it may lawfully license in the exercise of its governmental or discretionary powers.

The use of fireworks for exhibition or amusement is controlled by statute. The statute does not absolutely prohibit such use but contemplates and authorizes it whenever the town council, in the exercise of its discretion and judgment, shall deem the occasion suitable.

In *Blair* v. *Granger*, 24 R. I. 17, an action of trespass on the case for negligence was brought against the city of Providence to recover damages sustained by plaintiff through the frightening of his horse by a steam roller operated in Roger Williams Park by the city. The declaration alleged that said machine was an object which would frighten horses and that it was the duty of the city to erect warning signs sufficiently remote from the place where the roller was at work to warn plaintiff and all persons with horses and that it negligently failed so to do whereby plaintiff was injured. The Supreme Court affirmed a nonsuit, saying, "If injury results from the neglect of a city to keep a highway safe and convenient for travellers, then the city is liable by *statute*. Gen. Laws R. I. *cap*. 36, §§ 15, 16 and 18; *cap*. 72. § 12. Where, however, the place of injury is a park and not a highway, then the liability, if any, would be not by virtue of any statute that we are aware of, but by force of the common law, for it is a general principle, that municipal corporations are not liable to private actions for omissions or neglect in the performance of a corporate duty imposed upon them by law, or for that of

their servants engaged therein, when such corporations derive no benefit therefrom in their corporate capacity, unless such action is given by statute. *Oliver* v. *Worcester*, 102 Mass. 489; *Clark* v. *Waltham*, 128 Mass. 567; *Steele* v. *Boston*, 128 Mass. 583; *Curran* v. *Boston*, 151 Mass. 505; *Hayes* v. *Oshkosh*, 33 Wis. 314; *Wixon* v. *Newport*, 13 R. I. 454; *Dodge* v. *Granger*, 17 R. I. 664.

"The city of Providence for aught that appears, seems to have been in the discharge of a governmental power, engaged in the performance of a public service, in which it had no particular interest, and from which it derived no special benefit or advantage in its corporate capacity, but which it is bound to see performed in pursuance of a duty imposed by law for the general welfare of the inhabitants, or of the community; that the members of the park department, like those of the fire department, although appointed by the city corporation, are not, when acting in the discharge of their duties, servants, or agents in the employment of the city, for whose conduct the city can be held liable; but they act rather as public officers, or officers of the city charged with a public service, for whose negligence or misconduct in the discharge of official duty no action will lie against the city, unless expressly given; and hence the maxim *respondeat superior* has no application."

The contention of the defendant that when a duty is imposed upon a city or town by statute, from the discharge of which the municipality derives no profit or advantage, the performance of such a duty is public or governmental and the city or town is not responsible for the negligence of its officers and that the rule of *respondeat superior* has no application, is sustained by numerous well-considered cases in other jurisdictions. *Rose* v. *City of Gypsum*, 104 Kan. 412; *Trower* v. *City of Louisiana*, 198 Mo. App. 352; *Healy* v. *Kansas City*, 211 S. W. 59; *Tindley* v. *Salem*, 137 Mass. 171; *Pope* v. *City of New Haven*, 91 Conn. 79; *Bolster* v. *City of Lawrence*, 225 Mass. 387; *Reider* v. *City of Mount Vernon*, 160 App. Div. (N. Y.) 418; *De Agramonte* v. *City*

*of Mount Vernon*, 112 App. Div. (N. Y.) 291; *Von Lengerke* v. *City of New York*, 150 App. Div. (N. Y.) 98; *Claussen* v. *City of Luverne*, 103 Minn. 491; *Hill* v. *The Board of Alder-men*, &c., 72 N. C. 55; *Caughlan* v. *City of Omaha*, 174 N. W. 220; *Cornelisen* v. *City of Atlanta*, 19 Ga. App. 436; *Wheeler* v. *City of Plymouth*, 116 Ind. 158.

As the Superior Court in its rescript says, to leave it to a jury to determine whether an exhibition became in fact a nuisance because of the manner in which it was conducted would be casting too great a burden upon a municipality.

We think that the action of the trial court in sustaining the demurrer was correct and that the plaintiff's exception must be overruled.

The plaintiff's exceptions are overruled and the case is remitted to the Superior Court for further proceedings.

*Philip S. Knauer, John F. Collins, George Hurley,* for plaintiff.

*William T. O'Donnell, Waterman & Greenlaw,* for defendant.